**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Christopher Hitchins, | No. CV-23-00067-TUC-JCH (LCK) |
| Petitioner, | **ORDER** |
| v. | |
| M. Gutierrez, | |
| Respondent. | |

On February 6, 2023, Petitioner Ryan Hitchins filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Doc. 1. Petitioner alleges that the Federal Bureau of Prisons (BOP) miscalculated his release date, his true release date elapsed, and as a result, his continued incarceration was unlawful. *Id.* The Court ordered expedited briefing and Respondent filed their answer to the Petition on March 10, 2023. Docs. 6, 12. Petitioner filed an Amended Reply dated April 10, 2023.[1]

## I.   Background

On August 17, 2009, the United States District Court for the Western District of Oklahoma sentenced Petitioner to concurrent 180-month terms of imprisonment after he pleaded guilty to two counts of bank robbery. *See* Judgment in a Criminal Case, *United States v. Hitchins*, No. 08-cr-201-F (W.D. Okla. Aug. 18, 2009), ECF No. 46; Doc. 12-1, Ex. A. at ¶ 12. Before his sentencing, Petitioner served 405 days in federal custody.

---

[1] After the Response was docketed, the Court directed Petitioner to file his Reply on or before March 31, 2023. Doc. 14. Inadvertently, Petitioner did not receive a mailed copy of the Response. *See generally* docket. By Order, the Court amended Petitioner's Reply deadline from March 31, 2023, to April 16, 2023. Doc. 18. The Court also provided Petitioner leave to file an Amended Reply. *Id.* Petitioner filed an Amended Reply which was docketed by the Clerk of the Court on April 17, 2023. *See* Doc. 18.

Doc. 12-1, Ex. A. at ¶ 14.

Petitioner names M. Gutierrez as Respondent and raises one ground for relief, claiming the BOP miscalculated his release date. According to Petitioner, he should have been released on October 25, 2022. Doc. 1 at 4. He argues that the BOP improperly deducted good time credits lost in a 2022 disciplinary action from his 2023 balance. *Id.* In Plaintiff's view, the BOP could only deduct the credits from Plaintiff's 2022 balance, which had already been depleted. *Id.* Petitioner also argues that the BOP failed to give him 105 days' worth of good time credit that he is owed by statute. *Id.* On March 9, 2023, Petitioner was released from the BOP's custody, and he remains on supervised release.

**II.    Jurisdiction**

Jurisdiction exists over sentence-calculation claims where a habeas petition challenges the manner in which a sentence was executed. *See Tucker v. Carlson*, 925 F.2d 330, 331–32 (9th Cir. 1991). Habeas requires that the petitioner be in federal custody when the petition is filed. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). The "case-or-controversy" requirement is present through the proceedings. *Id.* at 7. Custody includes supervised release. *Mujahid v. Daniels*, 413 F.3d 991, 994 (9th Cir. 2005). A case is mooted when the court cannot grant any effectual relief. *Mujahid*, 413 F.3d at 994. Being released to supervised release, however, does not automatically moot a habeas claim. *Id.* at 994–95. For example, the matter is not moot if there is the possibility that a sentencing court could reduce the term of supervised release under 18 U.S.C. § 3583(e)(2). *Id.* at 995.

Here, Petitioner was in federal custody when he filed his petition and continues to be in federal custody through his supervised release. The Court finds that there is a possibility that the sentencing court could reduce Petitioner's supervised release term. *See Mujahid*, 413 F.3d at 994–95. Because the matter is not mooted by Petitioner's release from the BOP, this Court has jurisdiction over the habeas petition.

**III.    Administrative Exhaustion**

**A. Legal Standards**

Before a court may consider the merits of a Section 2241 petition, it must address

administrative exhaustion. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). To exhaust a Section 2241 claim, the petitioner must exhaust all available judicial and administrative remedies, unless excused. *Id.* For Section 2241 claims, the exhaustion requirement is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) ("If a petitioner fails to exhaust prudentially required administrative remedies, then a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies.") (internal citation and quotations omitted).

In *Ross v. Blake*, the Supreme Court explained that administrative procedures may be functionally unavailable if "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." 136 S. Ct. 1850, 1859 (2016). The Court identified three general sets of circumstances that can render administrative relief unavailable, such as: (1) where the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) where an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1858–60. However, "we expect that these circumstances will not often arise." *Id.* at 1859 (citation omitted). The Ninth Circuit has characterized the list in *Ross* as "non-exhaustive" and has found other limited circumstances that render administrative remedies unavailable, including the failure of prison officials to properly process a prisoner's timely filed grievance. *Andres v. Marshall*, 867 F.3d 1076, 1078–79 (9th Cir. 2017) (quoting *Ross*, 136 S. Ct. at 1858–59).

**B.  BOP's Administrative Remedy Process**

The administrative remedies for prisoners at BOP facilities are set forth at 28 C.F.R. § 542.10 *et seq.*, and in BOP policies promulgated under federal regulations. Doc. 12-5 ¶ 4. Program Statement (P.S.) 1330.18B, the Administrative Remedy Program, is the BOP's policy, which incorporates the above regulations. Doc. 12-5 ¶ 4; Doc. 12-6 at 2. These

1    regulations provide a four-step process for a prisoner to exhaust administrative remedies.

2    Doc. 12-5 ¶ 4. Before the submission of a Request for Administrative Remedy, a prisoner

3    with a complaint about any aspect their confinement should first seek to informally resolve

4    the complaint at the institution level by presenting the issue to staff on the required form,

5    commonly known as a BP–8. Doc. 12-5 at ¶ 4; *see* 28 C.F.R. § 542.13.

6        If the matter cannot be resolved informally, the prisoner may file a formal written

7    complaint to the Warden, who will investigate the matter and provide a written response to

8    the prisoner. Doc. 12-5 ¶ 4; *see* 28 C.F.R. § 542.14. The deadline for completion of an

9    informal resolution and submission of a formal written Administrative Remedy Request

10   on the appropriate form (BP–9) is 20 calendar days following the date on which the basis

11   for the request occurred. Doc. 12-5 ¶ 4*; see* 28 C.F.R. § 542.14(a). The Warden has 20

12   calendar days to respond to the BP–9. Doc. 12-5 ¶ 4; *see* 28 C.F.R. § 542.18.

13       A prisoner who is not satisfied with the Warden's response may submit an Appeal

14   on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar

15   days of the date the Warden signs the response to the BP–9. Doc. 12-5 ¶ 4; *See* 28 C.F.R.

16   § 542.15. A prisoner who is not satisfied with the Regional Director's response may submit

17   an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days

18   of the date the Regional Director signed the response. *See* 28 C.F.R. § 542.15. Once the

19   inmate files the BP–11, the Office of the General Counsel has 40 calendar days to respond

20   to the appeal. *See* 28 C.F.R. § 542.18. Appeal to the General Counsel is the final level of

21   agency review. *See* 28 C.F.R. § 542.15(a). The administrative process is not complete until

22   an appeal has been filed with the General Counsel and (1) the Office of General Counsel

23   responds on the merits to the BP–11, or (2) the Office of General Counsel fails to respond

24   within the time allotted for response. *See* 28 C.F.R. § 542.18.

25       **C. Analysis**

26       Administrative records show that Petitioner has not met the exhaustion requirement.

27   Petitioner alleges that BOP deducted 27 days' worth of good time credits for a disciplinary

28   incident that occurred on December 25, 2022 (incident report No. 3713601). Doc. 1 at 4.

Administrative records illustrate that Petitioner filed one Request for Administrative Remedy since December 25, 2022, Remedy No. 1150918-F1 on February 9, 2023, wherein he requested speech pathology. Doc. 12-5, Ex. B. at ¶ 15. There is no indication in the BOP records, nor in the Petition, that Petitioner sought an administrative remedy concerning either his projected release date or related to incident report No. 3713601. Petitioner alleges that when he was housed in the SHU, he asked for administrative remedies on the issues raised in his Petition, and staff refused to issue administrative remedy forms. *See* Doc. 1 at 3–4. In his Amended Reply, Petitioner expands on these allegations:

> The petitioner requested on a weekly basis for the required administrative remedy from his unit team ("requests" for admin. remedies are only allowed once a week) while petitioner was locked down shu [sic] whole unable [sic] to help himself in any fashion. Petitioner was told they "would bring one next week" or the next thing they would say "they forgot to bring one" or they would say "copy machine is down" or they would say "they have one on their desk" or they would say ["]Hitchins, you won't even get a response before your release what is your problem give it up[.]"

Doc. 18 at 1.

Plaintiff fails to show any set of circumstances under *Ross* or Ninth Circuit precedent where administrative relief was rendered unavailable such that he would be exempted from exhaustion. To the contrary, Plaintiff's assertions show that he never pursued his complaint beyond general requests at the informal level of the grievance procedure. Accepting the inaction by prison officials as true, Plaintiff's allegations lack any specificity or context to put prison officials on adequate notice for the particular action complained of in his case. *See Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (explaining that an appeal generally "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress"). Plaintiff merely alleges that he tried and failed to obtain administrative forms at unspecified times, from unspecified individuals. This is insufficient. Plaintiff must come forward with some supporting detail from which the Court could infer that he was hindered from exhausting the remedies available in his particular case. *See Albino v. Baca*, 747 F.3d 1162, 1169,

1172 (9th Cir. 2014). Because Plaintiff failed to exhaust available administrative remedies before he filed this action, the Court may dismiss the Petition for this reason alone.

**IV.    Merits**

Petitioner argues that he is entitled to habeas relief because the BOP impermissibly deducted 27 days of good conduct credit from his 2023 credits and failed to apply 105 good conduct credit days to his sentence. Doc. 1 at 4. Respondent makes two counter arguments: (1) the good conduct credit timeframe, specific to Petitioner's final year, ran between July 8, 2022, and July 7, 2023, therefore, 27 credit days were properly deducted from the 2022–2023 period; and (2) the BOP correctly applied 121 days of good conduct time credit to Petitioner's sentence, therefore, Petitioner's March 9, 2023, release date was accurate. Doc. 12 at 3–4.

**A. Good Time Credit Calculations**

The award of good time credits for federal prisoners is governed under 18 U.S.C. § 3624(b)(1). Previously, the BOP used a calculation that allowed for 47 days of good time credit per year. *See Bottinelli v. Salazar*, 929 F.3d 1196, 1197 (9th Cir. 2019). The First Step Act of 2018,[2] which amended Section 3624(b)(1), requires the BOP to allow federal prisoners to earn up to 54 days of good time credit per year of incarceration. The Section provides that a prisoner who is serving "a term of imprisonment of more than 1 year," but less than life, "may receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court," subject to the BOP's determination that, "during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1).

Consistent with the amendment, the BOP initially determines a projected release date by calculating the maximum good conduct credit possible based on the length of an inmate's sentence. 28 C.F.R. § 523.20(b)(1). The projected release date is subject to change during the inmate's incarceration. *Id.* The BOP awards prorated credit for any partial final year of the sentence imposed. *Id.* § 523.20(b)(2). An inmate may receive up to 54 days of

---

[2] First Step Act of 2018, Pub. L. No. 115-391, § 102(b)(1), 132 Stat. 5194, 5222 (2018).

1    good time credit on each anniversary date of his or her imposed sentence. *Id.*

2    § 523.20(b)(3). Credit for the last year of a term of imprisonment is awarded the day after

3    the end of the final "anniversary period," unless the final year is a complete year, in which

4    case credit for the last year is awarded on the first day of the final anniversary period. *Id.*

5    **B**. **Analysis**

6    First, the proffered documents show that the BOP properly deducted 27 days' worth

7    of good time credit from Petitioner's 2022–2023 period. Doc. 12-4 at 2. Petitioner's federal

8    sentence commenced on August 17, 2009, and he received 405 days in prior custody credit

9    (from July 8, 2008, through August 16, 2009). Doc. 12-1, Ex. A. at ¶ 14. Petitioner's Section

10   3624(b) "anniversary period," marking one year since Petitioner began serving his

11   custodial sentence, was July 7, 2009. Doc. 12-4 at 2. As such, Petitioner's good conduct

12   time amounts were calculated for start and stop dates between July 8th of the preceding

13   year to July 7th of the following year. For example, July 8, 2021, to July 7, 2022 (his final

14   full year of the imposed sentence), and July 8, 2022, to July 7, 2023 (his partial final year

15   of the imposed sentence).

16   Following three separate disciplinary incidents—Numbers 3586413 on January 12,

17   2022, 3587027 on January 14, 2022, and 3586964 on January 14, 2022—BOP sanctioned

18   Petitioner by deducting the statute's maximum credit of 54 days for the July 8, 2021, to

19   July 7, 2022, period (the 2021–2022 period). *See* Doc. 18-1 at 1–4; Doc. 12-4 at 2.

20   Petitioner argues that BOP impermissibly deducted an additional 27 days beyond the

21   allocation which had already been depleted for the 2021–2022 period. This is incorrect.

22   The Sentence Monitoring Report, dated February 22, 2023, indicates that BOP sanctioned

23   Petitioner by deducting 27 days for the 2022–2023 period which runs from July 8, 2022,

24   to July 7, 2023. Doc. 12-4 at 2. Because the alleged disciplinary incident occurred on

25   December 25, 2022, it would fall properly within the 2022–2023 period.

26   Second, Petitioner argues that he is entitled to habeas relief because BOP failed to

27   apply 105 days of good conduct credit to his sentence. Under Section 3624(b), Petitioner's

28   180-month sentence was eligible to receive 810 days of good conduct time credit (15 years

x 54 days of good conduct time credit/year). Doc. 12-1, Ex. A. at ¶ 13. Petitioner argues, "[o]n Dec. 2022 my release date was Feb. 10th 2023[,] however if BOP calculated and applied the 7-days a year owed pursuant to the First Step Act since Aug. 2008 that's 105 days credit owed to Petitioner…" Doc. 1 at 4. In his Amended Reply, Petitioner seemingly abandons his argument. Doc. 18 at 3 ("At this time I do intend to pursue the other 105 days that are owed to me per FSA act.").

Respondent argues, and Petition does not dispute, that BOP deducted 689 of good conduct credit days due to multiple institutional rule violations since Petitioner's incarceration began. Doc. 12-1, Ex. A. at ¶ 15. The proffered documents show that the BOP applied 121 days of good conduct time credit to Petitioner's sentence consistent with 28 C.F.R. § 523.20. Doc. 12-4 at 2. There is no evidence that BOP used a calculation limited to 47 days of good time credit or that Petitioner was otherwise deprived of good time credits he properly earned. In sum, Petitioner's sentence commenced on August 17, 2009; the total term of his sentence was fifteen years (to be released August 16, 2024); he received 405 days of prior custody credit for the time he spent incarcerated before his sentencing (August 16, 2024 – 405 days = July 8, 2023), and; he earned an additional 121 days of good conduct time credited (including 27 days for the 2022–2023 period) to his sentence (July 8, 2023 – 121 days = March 9, 2023). *See* Doc. 12 at 4; Doc. 12-4 at 2. Therefore, Petitioner's March 9, 2023, release date was accurate. Petitioner's claim also fails on the merits, and the Petition must be denied and dismissed.

Accordingly,

///

///

///

///

///

///

///

1

**V.      ORDER**

2

  **IT IS ORDERED DENYING** and **DISMISSING WITHOUT LEAVE TO**

3

**AMEND** Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus

4

(Doc. 1). The Clerk of the Court is directed to enter judgment and close this case.

5

  Dated this 27th day of April, 2023.

6

7

8

  Honorable John C. Hinderaker

9

  United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28